LARRY DELCONTE v. THE STATE OF NORTH CAROLINA

No. 8311SC371

(Filed 6 December 1983)

**1. Schools § 14— compulsory school attendance statutes not in direct conflict**

The trial court erred in holding that a conflict between G.S. 115C-378 and Article 39 of Chapter 115C is irreconcilable so as to require that the compulsory attendance law be disregarded.

**2. Schools § 14— home instruction not qualifying as nonpublic school**

The trial court erred in finding that plaintiff's home instruction of his children qualified as a nonpublic school under Article 39 of Chapter 115C. G.S. 115C-555 and G.S. 115C-554.

**3. Constitutional Law § 22; Schools § 14— compelling interest in compulsory education outweighing plaintiff's right to educate children at home based on religious beliefs**

A trial court erred in holding that, as a matter of law, plaintiff had a constitutionally protected religious belief that requires him to educate his children at home that outweighed the State's compelling interest in compulsory education. Art. I, § 15 and Art. IX, § 3 of the North Carolina Constitution and the First Amendment to the United States Constitution.

APPEAL by defendant from *Battle, Judge.* Judgment entered 14 January 1983 in Superior Court, HARNETT County. Heard in the Court of Appeals 26 August 1983.

Plaintiff brought this action seeking relief from the North Carolina Compulsory Attendance Law (N.C.G.S. 115C-378). He sought declaratory judgment and injunctive relief which would permit him to educate his children through home instruction in lieu of attendance at a public or private school.

At trial without a jury, plaintiff offered evidence tending to show the following: Plaintiff and his wife have lived in Harnett County, North Carolina, since March of 1981. The Delcontes have two school age children and two younger children. Mr. Delconte graduated from college and is presently employed as a machinist. Mrs. Delconte is a high school graduate who attended college for one year. She does not work outside the home.

Before moving to North Carolina, the Delcontes lived in New York. While there, they became associated with a non-denominational, fundamentalist Christian group. Some members of this

group sent their children to public schools while some sent their children to private schools. The Delcontes are deeply religious people who believe that the Bible commands that parents teach and train their children at home. While in New York, the Delcontes requested and received permission from the local board of education to teach their two school age children at home. Since moving to North Carolina, they have continued to teach their children at home. Mr. Delconte testified that his objections to public schools were both religious and "sociopsychological."

The instruction that the Delcontes provide for their children covers basic reading, writing, and arithmetic skills. In addition, chores, playtime, and Bible study are part of the children's day. A room has been set aside in the Delcontes' home as a classroom, equipped with textbooks, a blackboard and desks. The Delcontes determine the level and type of instruction for their children by reference to the instruction provided to children of similar age in public and private schools. Mrs. Delconte provides most of the instruction. She uses textbooks, workbooks, and other educational materials obtained from the State of New York and from Wake Christian Academy. The Delcontes' instruction for their children continues during most of the year.

The Delconte children have been tested at Wake Christian Academy by taking a national standardized test, the Metropolitan Achievement Battery. The results indicate that each of the children are learning at approximately the 75th percentile for their grade, except in the area of mathematics, where there is some weakness. These results indicate that the Delconte children are being taught the basics of reading, mathematics, language skills, science and social studies.

In the summer of 1981, several months after the Delcontes moved to North Carolina, the principal of the local public elementary school visited the Delcontes to discuss the status of their two school age children. After that conversation, Mr. Delconte advised the Superintendent of Harnett County Schools that he wished to continue educating his children at home because of his family's religious beliefs.

On 1 September 1981 Mr. Delconte wrote to Mr. Calvin R. Criner, the coordinator for the Office of Nonpublic Education for the State of North Carolina, and requested approval of his home

as a school for the education of his children. Accompanying this letter, Mr. Delconte sent all the information required by law to be submitted by one seeking to operate a nonpublic school. Mr. Delconte named his school the Hallelujah School. Mr. Criner responded on 4 September 1981 informing Mr. Delconte that the Hallelujah School could not be acknowledged as a nonpublic school "within the meaning of the law," because of an Attorney General's opinion which found that home instruction could not qualify as an approved nonpublic school.

Mr. Delconte was subsequently prosecuted for violating the North Carolina Compulsory Attendance Law, but these criminal charges have been voluntarily dismissed. Mr. Delconte then filed his complaint seeking declaratory judgment and injunctive relief from the Compulsory Attendance Law.

The trial judge ruled in favor of plaintiff that the Hallelujah School should be recognized as a valid nonpublic school, that attendance at the Hallelujah School satisfies the Compulsory Attendance Law, and that, even if the Hallelujah School were not a valid nonpublic school, the Compulsory Attendance Law would be unconstitutional as applied to the plaintiff and could not be enforced against him.

From this judgment, the State appeals.

*Attorney General Edmisten, by Special Deputy Attorney General Edwin M. Speas, Jr., for the State.*

*Thomas E. Strickland for plaintiff-appellee.*

EAGLES, Judge.

Plaintiff contends, and the trial court found, that the home instruction he provides for his children complies with North Carolina's compulsory attendance laws and that his right to educate his children at home is constitutionally protected.[1] We disagree and reverse.

---

1. In his brief, plaintiff relied on a United States District Court decision in favor of another plaintiff parent in an action alleging that North Carolina's compulsory attendance law infringed on his religious beliefs. That case was on appeal from the Eastern District of North Carolina at the time of this action in superior court. The United States Court of Appeals for the Fourth Circuit has since reversed the District Court's judgment. *Duro v. District Attorney*, 712 F. 2d 96 (4th Cir. 1983).

## I.

North Carolina's compulsory attendance law compels every parent, guardian or person having charge of school age children to send those children to school for a time period equal to the time which public schools are in session. G.S. 115C-378. The statute defines "school" to include "all public schools and such nonpublic schools as have teachers and curricula that are approved by the State Board of Education." *Id.*

Article 39 of Chapter 115C concerns nonpublic schools. Part 1 of Article 39 sets out the requirements for private church schools and schools of religious charters, and Part 2 sets out the requirements for qualified nonpublic schools. Attendance at these schools regulated by Article 39 satisfies the compulsory attendance laws, provided that the schools maintain attendance and immunization records, operate at least nine months a year, and conform to fire, health and safety standards. G.S. 115C-548 and G.S. 115C-556. Plaintiff presented evidence that he has met all of these requirements. The trial court found that the compulsory attendance law was in direct conflict with Article 39, that the compulsory attendance law must yield to the provisions of Article 39, and that plaintiff's home qualified as a nonpublic school under Article 39.

[1]   The trial court erred in finding that G.S. 115C-378 is in direct conflict with and must yield to the provisions of Article 39. It is true that G.S. 115C-378 allows compliance with compulsory attendance requirements by attendance at nonpublic schools with teachers and curricula approved by the State Board of Education, while Article 39 of Chapter 115C allows compliance with compulsory attendance requirements by attendance at nonpublic schools with no mention of approval by the State Board of Education. While there seems to be some conflict between G.S. 115C-378 and Article 39 of Chapter 115C, repeal of G.S. 115C-378 may not be implied. Statutes dealing with the same subject matter will be reconciled and effect given to all where possible. *Comm'r of Insurance v. Automobile Rate Office*, 294 N.C. 60, 67, 241 S.E. 2d 324, 329 (1978). We hold that the trial court erred in holding that the conflict between these statutes was irreconcilable so as to require that the compulsory attendance law be disregarded in this case.

[2] The trial court also erred in finding that plaintiff's home instruction qualified as a nonpublic school under Article 39 of Chapter 115C. Plaintiff's home instruction of his children does not qualify under Part 1 of Article 39 as a private church school or a school of religious charter. Mr. Delconte testified that his family is not part of any church or organized religious group. There are no facts to show that the Delcontes' home school is "operated by any church or other organized religious group or body as part of its religious ministry." See G.S. 115C-554. Plaintiff contends, based on Part 2 of Article 39, that the Hallelujah School meets the requirements for qualified nonpublic schools. Attendance at a "qualified nonpublic school" meets the requirements of compulsory school attendance. G.S. 115C-556. There is no North Carolina case interpreting the term "school" in this statute, but the majority of other jurisdictions hold that home instruction cannot reasonably be considered a school. See, *State v. Riddle*, 285 S.E. 2d 359 (W. Va. 1981); *City of Akron v. Lane*, 65 Ohio App. 2d 90, 416 N.E. 2d 642 (1979); *F. & F. v. Duvall County*, 273 So. 2d 15 (Fla. Dist. Ct. App. 1973); *State v. Garber*, 197 Kan. 567, 419 P. 2d 896 (1966), *cert. denied*, 389 U.S. 51, 88 S.Ct. 236, 19 L.Ed. 2d 50 (1967); *State v. Lowry*, 191 Kan. 701, 383 P. 2d 962 (1963); *In Re Shinn*, 195 Cal. App. 2d 683, 16 Cal. Rptr. 165 (1961).

Although Part 2 of Article 39 does not define "school," it does list the types of schools which qualify as nonpublic schools:

The provisions of this Part shall apply to any nonpublic school which has one or more of the following characteristics:

(1) It is accredited by the State Board of Education.

(2) It is accredited by the Southern Association of Colleges and Schools.

(3) It is an active member of the North Carolina Association of Independent Schools.

(4) It receives no funding from the State of North Carolina.

G.S. 115C-555. All schools described by subsections (1), (2), and (3) would be established educational institutions. Subsection (4) is a general term following a list of specific terms. The rule of *ejusdem generis* dictates that "where general words follow a

designation of particular subjects or things, the meaning of the general words will ordinarily be presumed to be, and construed as, restricted by the particular designations and as including only things of the same kind, character and nature as those specifically enumerated." *State v. Fenner*, 263 N.C. 694, 697, 140 S.E. 2d 349, 352 (1965). Therefore, we hold that G.S. 115C-555(4) refers only to established educational institutions. We reject plaintiff's contention that his home school is a qualified nonpublic school merely because it receives no state funds.

The trial court's holding that plaintiff's home instruction qualified as a nonpublic school is also at odds with the Attorney General's formal opinions on the subject of home instruction. In 1969 the Attorney General advised the State Board of Education that home instruction "does not meet the requirements of the Compulsory Attendance Law." 40 N.C.A.G. 211, 212 (July 3, 1969). This opinion was based on a statutory framework that required private schools to meet various standards regarding qualifications of teachers, the course of study, and the grading and promotion of pupils. In 1979, the General Assembly eliminated all standards relating to the qualifications of teachers and content of the curriculum by enacting the legislation that is now codified as Article 39 of Chapter 115C. Under this statutory framework, the Attorney General again gave his formal opinion that parents could not comply with the requirements of the compulsory attendance laws by educating their children at home. 49 N.C.A.G. 8 (August 9, 1979). In light of these long-standing formal opinions by the Attorney General, and in the absence of legislative action in response to those opinions expressly to permit home instruction as a means of complying with compulsory attendance laws, we hold that "school" means an educational institution and does not include home instruction.

II.

[3] This case presents both state and federal constitutional issues. There are two state constitutional provisions that must be considered in construing any legislation concerning education in North Carolina. Article 1, Section 15 of the North Carolina Constitution provides: "The people have a right to the privilege of education, and it is the duty of the State to guard and maintain that right." Article 9, Section 3 provides: "The General Assembly

shall provide that every child of appropriate age and of sufficient ability shall attend the public schools, unless educated by other means." In regard to compulsory attendance laws, we read these state constitutional provisions as directing that compulsory attendance requirements can be met in public schools or private schools only as expressly permitted by the General Assembly. Because Article 39 does not expressly permit home instruction, the State's duty to "guard and maintain" each child's right to an education cannot be met by allowing home instruction to fulfill compulsory attendance requirements.

Although the First Amendment to the United States Constitution prevents a state prohibition or restriction on the free exercise of religion, a state may regulate one's freedom to act pursuant to one's religious beliefs. *Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940). In order to determine whether a state is unconstitutionally infringing a citizen's First Amendment right, a court must determine: (1) whether a sincere religious belief exists and is infringed by the state, and (2) if so, whether there is a state interest of "sufficient magnitude to override the interest claiming protection under the Free Exercise Clause." *Wisconsin v. Yoder,* 406 U.S. 205, 214, 92 S.Ct. 1526, 1532, 32 L.Ed. 2d 15, 24 (1972). The trial court here erred in holding that plaintiff has a protected religious belief that requires him to educate his children at home and that the state's interest in educating his children does not override plaintiff's interest in educating his children at home.

Mr. Delconte testified that his decision to teach his children at home was based on religious factors *and* on "sociopsychological" factors. He admitted, "I can't answer the question of whether I would send my children to public or private schools if my sociopsychological objection to schooling outside the home changed." An action based on philosophical or personal beliefs is not protected by the Free Exercise Clause. *Id.* at 216, 92 S.Ct. at 1533, 32 L.Ed. 2d at 25. Mr. Delconte's testimony shows that, even in his own mind, it is not clear that his objection to schooling outside the home is based on religious beliefs. Although it is clear that Mr. Delconte is a man with sincerely held religious beliefs, the trial court erred in finding, as a matter of law, that Mr. Delconte's belief that his children should be instructed at home is constitutionally protected.

Assuming, *arguendo*, that plaintiff had a protected belief, we hold that the state has an overriding interest in assuring that plaintiff's children are educated. The State of North Carolina has a compelling interest in providing access to education for all, in order to prepare future citizens to "participate effectively and intelligently in our political system" and to "prepare individuals to be self-reliant and self-sufficient." *Id.* at 221, 92 S.Ct. at 1536, 32 L.Ed. at 29. The State has no means by which to insure that children who are at home are receiving an education. Therefore, the State's interest in compulsory education outweighs plaintiff's interest in educating his children at home because of religious and sociopsychological beliefs. The trial court erred in holding that, as a matter of law, plaintiff had a constitutionally protected religious belief that outweighed the State's compelling interest in compulsory education.

Reversed.

Judges WHICHARD and JOHNSON concur.